IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: TEMSCO NC INC. | CASE NO. 13- 06907 (ESL) |
| Debtor | CHAPTER 11 |

OPINION AND ORDER

This case is before the court upon the State Insurance Fund Corporation's (hereinafter referred to as the "SIF") *Motion Requesting Permission to File Late Proof of Claim* filed on August 25, 2014, alleging that it was not properly notified of the present bankruptcy proceeding via the CM/ECF (PACER system) because Debtor's Form B9F (Docket No. 14, Certificate of Notice) included the SIF's incorrect address (Docket No. 123). TEMSCO NC Inc.'s (hereinafter referred to as the "Debtor" or "Temsco") filed its *Reply to SIF's Objection to Plan of Reorganization, Objection to Request To File A Late Proof of Claim and Allowance of Administrative Payment* on August 28, 2014 (Docket No. 134) arguing that the SIF was adequately and timely notified of the filing of the instant case because the address used by the Debtor was the one used by the SIF in several communications the SIF sent to the Debtor. The SIF on September 5, 2014 filed its *Sur-Reply to Debtor's Reply to SIF's Objection to Plan of Reorganization Objection to File a Late Proof of Claim and Allowance of Administrative Payment* (Docket No. 145) whereby the SIF replies that the Debtor did not include (attach) communications from the SIF in its exhibits to Docket No. 134 in which the SIF used the address the Debtor in turn had used to notify the SIF of the instant bankruptcy proceeding. The SIF argues that it has used the same address since the year 2003, which is as long as the subscribing attorney has worked in the SIF's Bankruptcy Division. Subsequently, on February 3, 2015, the Debtor filed its *Motion for Summary Judgment and/or Legal Memorandums in Support Thereof* (Docket No. 204) arguing that the SIF was properly notified of the Debtor's bankruptcy

-1-

proceeding. The SIF filed its *Legal Memorandum* on February 3, 2015 (Docket No. 205). The SIF filed its Answer to *Motion for Summary Judgment* on February 9, 2015 (Docket No. 209) and the Debtor filed *its Reply to/or Response to Motions filed by the SIF* on February 24, 2015 (Docket No. 227). The SIF on March 16, 2015 filed its *Answer to Docket No. 227* (Docket No. 248). For the reasons stated herein the court grants the Debtor's motion for summary judgment and denies the SIF's motion for summary judgment.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtor filed the instant bankruptcy petition under Chapter 11 of the Bankruptcy Code on August 24, 2013. On August 26, 2013, the Debtor filed the list of *Creditors Holding the 20 Largest Unsecured Claims* and included the SIF with a claim in the amount of $40,886.79. The Debtor listed the following address for the SIF: P.O. Box 42006, San Juan, PR 00940-2006 (Docket No. 9). On the same date, the Debtor also filed a Motion submitting a list of all the creditors in which it also included the SIF with the same address as in the list of creditors holding the 20 largest unsecured claims (Docket No. 10). On August 30, 2013, the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadline* (the "Notice") was docketed in the instant case (Docket No. 12). Said Notice disclosed that the deadline to file a proof of claim for all creditors was 12/26/13 and for a governmental unit the deadline was 02/26/14. The certificate of service of the Notice does not include the SIF in the list of persons/entities that received notice by first class mail by the Bankruptcy Noticing Center. The SIF is included in the list of persons/entities that were noticed by electronic transmission. The Notice was sent to the following e-mail address: Alejandro.Suarez@cfse.gov.pr (Docket No. 14). On September 11,

2013, the Debtor filed its Summary of Schedules. The Debtor listed the SIF or the CFSE (the acronym in the Spanish language that stands for "Corporación del Fondo del Seguro del Estado") on Schedule E (Creditors Holding Unsecured Priority Claims) as having a disputed unsecured priority claim in the amount of $40,887. The Debtor disclosed that this claim was incurred in the year 2007 and the nature of the claim was for workmen compensation premiums (Docket No. 18).  The 341 meeting of creditors was initially scheduled for September 27, 2013 (Docket Nos. 12 & 25), but the same was held and closed on October 11, 2013 (Docket No. 32).

On February 27, 2014, the Debtor filed a *Motion Requesting an Extension of Time (60 days) to File the Disclosure Statement, Reorganization Plan and Stipulation with PRIDCO* (Docket No. 80) and the court granted the same on March 4, 2014 (Docket No. 81). On April 28, 2014, the Debtor filed a second *Motion Requesting Final Extension of Time (60 days) to File Disclosure Statement and Chapter 11 Plan* (Docket No. 87) and the same was granted on May 16, 2014 (Docket No. 92). On June 19, 2014, the Debtor filed a *Joint Motion Informing of Settlement and Requesting an Extension of Time of Fifteen (15) Days to File Stipulation Between Debtor and PRIDCO, Disclosure Statement and Plan* (Docket No. 98) and the same was granted on June 30, 2014 (Docket No. 99). On July 15, 2014, the Debtor filed its *Chapter 11 Small Business Disclosure Statement* (Docket No. 102) and its *Chapter 11 Small Business Plan* (Docket No. 103). The SIF was not included as a priority unsecured claim or as a general unsecured claim in either the Debtor's Disclosure Statement or Plan of Reorganization. On July 16, 2014, the court conditionally approved the Disclosure Statement, allowed time for filing acceptances or rejections of the plan, and provided time for filing objections to the Disclosure Statement and to the confirmation of the Plan, combined with notice thereof and of the hearing on confirmation of the Plan (Docket No. 104).

On August 25, 2014, the SIF filed a *Motion Requesting Permission to File Late Proof of Claim* (Docket No. 123) alleging that it was not properly notified of the present bankruptcy proceeding via the CM/ECF (PACER system) because Debtor's Form B9F (Docket No. 14,

Certificate of Notice) included the SIF's incorrect address (Docket No. 123). The SIF argues that late filed claims may be permitted in cases where notice to the creditor was materially deficient or misleading. On August 25, 2014, the SIF filed proof of claim #47-1 in the amount of $25,772.53 as a priority claim for worker's compensation insurance premiums.  On August 25, 2014, counsel for the SIF filed a *Motion Requesting Permission to be Excused to Appear at the Hearing of August 28, 2014* (Docket No. 124) since he will be absent from the jurisdiction of Puerto Rico until August 31, 2014 due to a prior engagement. Also on the same date, the SIF filed its *Objection to the Plan of Reorganization* (Docket No. 125) based upon the fact that Debtor's plan of reorganization does not include the SIF's claim (or indebtedness) and thus, does not contain adequate information pursuant to 11 U.S.C. §1125(a)(1). On August 26, 2014, the court granted the SIF's motion requesting permission to be excused from appearing at the 08/28/2014 hearing (Docket No. 124) and noted that the hearing on the final approval of the disclosure statement and confirmation of the plan is scheduled for 08/29/2014 at 10:00am not 08/28/2014 (Docket No. 128).

On August 28, 2014, Temsco filed its *Reply to SIF's Objection to Plan of Reorganization, Objection to Request To File A Late Proof of Claim and Allowance of Administrative Payment* (Docket No. 134) arguing that the SIF was adequately and timely notified of the filing of the instant case because the address used by the Debtor was the one used by the SIF in several communications the SIF sent to the Debtor. Moreover, as evidenced by the SIF's web page, www.cfse.pr.gov said address corresponds to creditor SIF. Temsco further argues that, "[u]nder ordinary due process requirements, creditors operating business with various departments or divisions, etc. receive adequate notice when one such branch or department receives notice, because these creditors bear responsibility to have adequate systems in place to funnel legal notices to the appropriate personnel within the business entity. In re Frontzak, 2009 Bankr. Lexis 3817 (Bankr. N.D. Ill. 2009)."

On August 29, 2014, a hearing was held in which the court ordered the approval of the disclosure statement, given that after the agreements reached and stated in open court there is no objection to the final approval of the disclosure statement, and thus, an order will be entered accordingly. The court also held that the plan (Docket No. 103) as amended and clarified, complies with Section 1129 and thus, the same was confirmed (Docket No. 137). The Order Approving Disclosure Statement and Confirming Plan was docketed on August 29, 2014 (Docket No. 138).

On September 2, 2014, the SIF filed a *Motion Requesting Permission to File a Sur-Reply to Debtor's Reply to SIF's Objection to Plan of Reorganization Objection to Request to File a Late Proof of Claim and Allowance of Administrative Payment* (Docket No. 142). On September 3, 2014, the court granted the SIF's motion to file a sur-reply within five (5) days to Debtor's reply to objection to plan, objection to request to file a late proof of claim and allowance of administrative payment (Docket No. 142), except for filing a sur-reply to SIF's objection to confirmation, given that an Order confirming the plan was entered on August 29, 2014 (Docket No. 138) (Docket No. 143).

The SIF filed on September 5, 2014 its *Sur-Reply to Debtor's Reply to SIF's Objection to Plan of Reorganization Objection to File a Late Proof of Claim and Allowance of Administrative Payment* (Docket No. 145) whereby the SIF argues that the issue before the court is what constitutes proper notice or "adequate knowledge" of the instant bankruptcy proceeding. In its reply, the SIF argues that the Debtor did not include (attach) communications from the SIF in its exhibits to Docket No. 134 in which the SIF used the address the Debtor used to notify the SIF of the instant bankruptcy proceeding. The SIF argues that it has used the same address since the year 2003, which is as long as the subscribing attorney has worked in the SIF's Bankruptcy Division.

On November 21, 2014, the parties filed a *Joint Motion for Extension of Time and for Continuance of Preliminary Pre-Trial and Scheduling Conference* (Docket No. 180) requesting

an extension of time to comply with Fed. R. Bankr. P. 7026 until December 11, 2014 and that the preliminary pre-trial and scheduling conference be rescheduled at a later date. On November 25, 2014, the court granted the joint motion filed by the Debtor and the SIF requesting continuance of the hearing and continued the same to February 10, 2015 (Docket No. 182). On December 11, 2015, the Debtor and the SIF filed a *Joint Motion for Additional Extension of Time* (Docket No. 188) to file the joint preliminary pre-trial report and/or any agreement and/or stipulation and the court granted the same on December 16, 2014 (Docket No. 189). On December 18, 2014, the parties filed a *Joint Preliminary Pre-Trial Report* in which the parties identified the following contested legal issues: (i) whether the notice to SIF's San Juan regional office was adequate; and (ii) whether the SIF's proof of claim was filed after the deadline lapsed (Docket No. 191). Also, on said date, the Debtor and the SIF filed a *Stipulation Related to the Request of Administrative Expenses and for Contingent Treatment of SIF's Proof of Claims* (Docket No. 192) and the *Stipulation* was approved on January 15, 2015 (Docket No. 196).

On January 19, 2015, the Debtor filed a *Motion for Extension of Time* (Docket No. 197) requesting until January 29, 2015 for both parties to file the Joint Statement and Legal Memoranda. On January 22, 2015, the court granted the extension of time to file the Joint Statement and Legal Memoranda (Docket No. 198). On January 29, 2015, the Debtor and the SIF filed the *Joint Statement of Uncontested Material Facts* (Docket No. 200). On January 29, 2015, the parties filed a *Joint Motion for Extension of Time* of five (5) days to file their legal memoranda (Docket No. 201).

On February 3, 2015, the Debtor filed its *Motion for Summary Judgment and/or Legal Memorandum in Support Thereof* (Docket No. 204) arguing that the SIF was properly notified of the Debtor's bankruptcy proceeding pursuant to 11 U.S.C. §342(a), (g) and Fed. R. Bankr. P. 2002(g)(4), (5), 5003(e), 9036 and P.R. LBR 9036-1(a)(1) due to the following: (i) neither the Bankruptcy Code or the Rules require that a creditor be listed at a particular address, and thus, there is no requirement that an entity be listed at its home office or principal place of business;

(ii) "… under ordinary due process requirements, creditors operating business[es] with various departments or divisions, receive adequate notice when one such branch or department receives notice, because these creditors bear responsibility to have adequate systems in place to funnel legal notices to the appropriate personnel within the business entity. In re Frontzak, 2009 Bankr. Lexis 3817 (Bankr. N.D. Ill. 2009);" (iii) "[i]n the absence of such guidance, it is clear that the appropriate notice requirement of Section 342(a) necessarily follows the constitutional due process requirement that such notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. In re O'Shaughnessy, 252 B.R. 722, 729; WebMD Practice Servs. v. Sedlacek, 325 B.R. 202, 211. For this purpose, errors in scheduling a creditor's address, so long as minor, do not render the notice sent to the improper address insufficient. Ford Motor Credit Co. v. Weaver, 680 F. 2d 451 (6th Cir. 1982); In re Stough, [2012 Bankr. Lexis 2998 (Bankr. N.D. Ohio 2012)];" (iv) the SIF was included in the List of Creditors Holding 20 Largest Unsecured Claims filed on August 24, 2013, in the List of Creditors filed on August 25, 2013 and in Schedule E filed on September 11, 2013. In the List of Creditors and in Schedule E the Debtor listed the following mailing address for the SIF: P.O. Box 42006, San Juan, PR 00940-2006. This is the mailing address of the San Juan Regional Office. The SIF has not alleged that the address scheduled by the Debtor was insufficient to reach said mail box or that it does not belong to it. The SIF acknowledges that this particular address is not the address where it receives bankruptcy notices and/or where its Bankruptcy Division Office and in-house counsels are located; (v) The SIF's arguments disregard 11 U.S.C. §342(g)(1) and Fed. R. Bankr. P. 2002(g)(5) since it has not filed a statement that designates the name and address of the person or organizational subdivision responsible for receiving notices and describes the procedures established to cause such notices to be delivered to the designated person or subdivision; (vi) the SIF has not registered its mailing address in the Register of Government Addresses pursuant to Fed. R. Bankr. P. 5003(e); (vii) pursuant to the certificate of service (Docket No. 14) issued on September 1, 2013, the SIF was

notified of the Debtor's bankruptcy case and the deadline to file proof of claims through electronic transmission to the e-mail address of Alejandro.Suarez@cfse.gov.pr. The SIF was registered and agreed to receive notices by electronic transmission to said e-mail pursuant to Fed. R. Bankr. P. 9036 and P.R. LBR 9036-1; (viii) TEMSCO's attorney alleges that she contacted the BNC on January 23, 2015 and a representative informed her the SIF had executed and filed an Electronic Bankruptcy Noticing Agreement on July 12, 2010. In such agreement, the SIF agreed to receive bankruptcy notices via e-mail to Alejandro.Suarez@cfse.gov.pr and thus, the notice of the Chapter 11 case was sent to said e-mail address. The BNC has no authorization to provide a copy of said agreement; and (ix) the e-mail address provided by the SIF for it to be noticed is presumed to be a proper address for noticing pursuant to Fed. R. Bankr. P. 2002(g)(4) (Docket No. 204).

On February 3, 2015, the SIF also filed its *Legal Memorandum* arguing that: (i) attorney Alejandro Suarez Cabrera has not worked in the SIF's Bankruptcy Division since July 16, 2013; (ii) the mailing address the Debtor included in the petition belongs to the SIF's San Juan Regional office. The SIF has nine (9) regional divisions; (iii) since the year 2003 the SIF has used the same mailing address. Bankruptcy case no. 12-04385, which was handled by the same initial attorney of the Debtor (attorney Hector Pedrosa Luna) and the SIF was noticed to the following address: PR State Insurance Fund Corporation P.O. Box 365028, San Juan, PR 00936-5028; (iv) the Debtor's Exhibit regarding the SIF's address as it appears on its web page (Docket No. 134, SIF's address), includes the following telephone number 787-793-5959, which the Debtor's attorney could have called to request the extension of the Bankruptcy Division and thus obtain the correct address of the SIF for a bankruptcy proceeding; (v) a similar issue regarding improper noticing occurred in the case of In re German Montalvo Ruiz (Case No. 13-10497) and In re Millenium Institute for ANC Inc. (Case No. 12-02689) in which the court ruled in favor of the SIF; (vi) late filed claims may be permitted in cases where notice to the creditor was materially deficient or misleading citing In re Collier, 307 B.R. 20 (Bankr. D. Mass. 2004); Pratt

v. Philbrook, 109 F.3d 18, 22 (1st Cir. 1997); (vii) "[t]he determination of what constitutes 'excusable neglect' is unique to Chapter 11 proceedings and within the Court's broad equitable power to balance the interest of the affected parties;" (viii) in Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 507 (B.A.P. 1st Cir. 2005), the court stated: "[i]n order to ensure sufficient notice to parties in interest of various events in a bankruptcy case, the Bankruptcy Code and Rules impose specific obligations on the debtor and the Clerk of the bankruptcy court. For example, the debtor must submit a list or a schedule of the names and addresses of all creditors. 11 U.S.C. §521(1); Fed. R. Bankr. P. 1007(a). Notices to parties in interest that are required to be sent by the Clerk, or the debtor if the court directs, are mailed to the names and addresses as they appear on the creditor list or schedules submitted by the debtor, unless the creditor files a request designating a different mailing address. See Fed. R. Bankr. P. 2002(g)(2). The creditor list submitted by the debtor must therefore contain information reasonably calculated to provide notice to the creditor. 9 Lawrence P. King, Collier on Bankruptcy P 1007.02[2] (Supp. 2004);" (ix) the Bankruptcy Court may use its equitable powers to allow the filing of a late proof of claim when a creditor did not receive proper notice of the bankruptcy; (x) pursuant to Fed. R. Bankr. P. 3002(c), the creditor in a Chapter 13 proceeding is required to file a proof of claim within 90 days after the date first set for the meeting of creditors and a governmental entity has 180 days; (xi) pursuant to Fed. R. Bankr. P. 9006(b)(1) the court is allowed to enlarge time limitations on certain filings where the creditor has failed to file in a timely manner due to "excusable neglect." "However, the language of Rule 9006(b)(3) clearly states that Rule 9006 cannot be used to expand the list of exceptions contained in Rule 3002(c);" (xii) due process requires allowance of late filed claims when a creditor is provided with inadequate notice of the bankruptcy and bar date. In re Cole, 146 B.R. 837, 841, In re Remington Rand Corp., 836 F.2d 825 (3d Cir. 1988); Reliable Electric Co. v. Olson Constr. Co., 726 F. 2d 620, 623 (10th Cir. 1984), In re Martinez, 51 B.R. 944, 947 (Bankr. D. Colo. 1985); In re Barnett, 42 B.R. 254 (Bankr. S.D.N.Y. 1984); (xiii) the burden is on the debtor to insure that all creditors

have been properly notified; and (xiv) for a creditor to have "adequate notice" of the filing of a bankruptcy petition, the notice must be sufficient to satisfy due process requirements in the case of private parties and fundamental fairness in the case of government entities (Docket No. 205).

On February 9, 2015, Temsco filed a *Motion for Leave to File Brief Reply and for Extension of Time* (Docket No. 208) to clarify several matters regarding the controversies and legal framework. Also on said date, the SIF filed its *Answer to Motion for Summary Judgment* arguing as follows: (i) the subscribing attorney has been the only attorney working in the SIF's Bankruptcy Division since July 16, 2013. Thus, a notice to Alejandro.Suarez@cfse.gov.pr has no bearing; (ii) the SIF through its attorney sustained a telephone conversation with a lady by the name of Alia at NCRS, and was informed that the NCRS is a voluntary procedure not mandatory; (iii) the facts occurred under attorney Hector Eduardo Pedrosa who was the same attorney in case No. 12-04385, a Chapter 7 case in which the correct address of the SIF was used; and (iv) uncontested fact #7 of docket No. 200 has been clarified by BAPCPA which permits a creditor to designate a preferred address for receiving bankruptcy notices. 11 U.S.C. §342 establishes: "that notice to a creditor will not be effective unless it is served at an address filed by the creditor with the court or at an address stated in two communications from the creditor to the debtor within 90 days of the filing of the bankruptcy case" (Docket No. 209). On February 10, 2015, the SIF filed a *Motion Presenting Document and Nun Pro Tunc Amendment* whereby it establishes that: (i) after filing docket No. 209, the Human Resource Division presented a certification in support of the answer to the summary judgment that evinces that since July 16, 2013, the subscribing attorney commenced to work as Director of the Bankruptcy Division; and (ii) that the creditors list and matrix list of case No. 12-04385 ESL 7 clearly demonstrate that the address of the SIF is: PR State Insurance Fund, P.O. Box 365028, San Juan, P.R. 00936-5028 (Docket No. 210, Exhibit I).

On February 10, 2015, the pre-trial conference hearing was held in which the court granted the Debtor fourteen (14) days to reply to recent motions by the SIF and the SIF was

granted fourteen (14) days thereafter to sur-reply (Docket No. 212). On February 24, 2015, Temsco filed its *Reply to and/or Response to Motions Filed by the SIF* arguing that: (i) the SIF references additional facts related to procedural events in other cases, namely, In re MJR Security Police Inc., case no. 12-04385, In re Millenium Institute for ANC Inc., case no. 12-02689 and In re German Montalvo, case no. 13-10497 in which it was included as a creditor. Temsco argues that these additional facts were submitted by the SIF without complying with Fed. R. Bankr. P. 7056. Thus, the Debtor is not able to respond to each additional fact individually in a separate answer and/or statement. The Debtor requests that the additional facts only be considered by taking judicial notice of the docket entries related to the cases to which the SIF refers in its Memorandum, Answer and Motion in conformity with Fed. R. Evid. 201 and Fed. R. Bankr. P. 9017; (ii) contrary to the SIF's arguments, the case of In re German Montalvo, Case No. 13-10497 is not applicable because it is a Chapter 13 case and the untimely filing of a proof of claim should be resolved pursuant to Fed. R. Bankr. P. 3002(c) and thus, the excusable neglect standard of Fed. R. Bankr. P. 9006(b)(1) is inapplicable. Moreover, in this case the court granted the SIF's request to file a late proof of claim as unopposed through the issuance of a general Order without including any reference to the legal basis of its determination; (iii) Temsco argues that the facts in the case of In re Millenium Institute for ANC Inc. (case no. 12-02689) are different given that the SIF had entered its appearance in the case through its attorney Wally De la Rosa and Alejandro Suarez using the SIF's central offices mailing address in this particular debtor's prior bankruptcy case (case no. 08-04767) and in Debtor's second bankruptcy filing (case no. 12-02689) the same debtor reported a different mailing address for the SIF; (iv) in In re MJR Security Police Inc. (case no. 12-04385) there was no notice of appearance entered by an attorney and no reference was made to a Bankruptcy Division or Central Offices of the SIF in its proof of claim #1. The SIF in its proof of claim #1 in this particular case requested that notices should be addressed to Alejandro Suarez Cabrera at P.O. Box 365028, San Juan, P.R. 00936-5028 without making any reference that Suarez was SIF's attorney or that the address belonged

to the SIF's Bankruptcy Division. Moreover, the SIF's proof of claim was executed by Carlos Colon Rosario, Chief Officer of Credit & Collections within the SIF. Thus, no knowledge of the SIF's Bankruptcy Division and/or Central Offices mailing address can be attributed to attorney Pedrosa or to the Debtor in the instant case; (v) whether the mailing address reported by the Debtor in the List of Creditors and Schedules for the SIF was adequate is irrelevant to the disposition and adjudication of the pending legal controversies, given that the SIF did not receive notice of the Debtor's Chapter 11 case through mail, but rather through electronic transmission; (vi) the BNC sent Debtor's notice of its Chapter 11 case by electronic transmission to the e-mail address of Alejandro.Suarez@cfse.gov.pr because the SIF (or in the Spanish language, "Corporación del Fondo del Seguro del Estado," or "CFSE") registered said e-mail address with the BNC to receive all notices within this court. The BNC sent the notice via electronic transmission due to the agreement executed by the SIF to receive notice by electronic means to said e-mail address. "The BNC did not send Debtor's Notice of Chapter 11 case to said e-mail address because attorney Alejandro Suarez was SIF's attorney in other non-related cases and/or appeared as SIF's counsel in the instant case, but because of the agreement executed by the SIF to receive notice by electronic transmission to said e-mail address. In fact, notices are required to be given to creditors and not to attorneys, even if those attorneys are known, unless an attorney for said creditor has filed an entry of appearance in the case. At the time the Notice of Debtor's Chapter 11 case was issued, no attorney for the SIF had to enter its appearance in the instant case; (vii) the service of notice given by the BNC through electronic transmission of Debtor's Chapter 11 case to the e-mail of attorney Alejandro Suarez was not inadequate due to the following: (a) if the SIF wanted to receive all electronic notices to another e-mail address, it should have taken the appropriate steps to notify the BNC. "Where a litigant's own internal procedures are the cause of a failure to comply with proper legal procedures, courts generally refuse to grant relief from the consequences of the lack of compliance" In re Biddy, 7 B.R. 50, 52 (Bankr. N.D. Ga. 1980);(b) the SIF's failure to timely file a proof of claim is the result of its

own to negligence to maintain its own internal procedures to funnel legal notices to the appropriate personnel within the business entity. In re Frontzak, 2009 Bankr. Lexis 3817 (Bankr. N.D. Ill. 2009); and (viii) if the SIF wanted to receive notices to a preferred mailing address, it should apply to the NCRS services by filing of the proper application or documentation. Application to the NCRS would have allowed the SIF to benefit from 11 U.S.C. §342(g) (Docket No. 227).

On March 16, 2015, the SIF filed its *Answer to Docket 227 of Debtor* by which it argues that at the time the present bankruptcy proceeding was filed, attorney Alejandro Suarez Cabrera was not working in the Bankruptcy Division. The fact that attorney Suarez was not removed pursuant to section 342, and thus a late proof of claim was filed may be considered excusable neglect pursuant to Fed. R. Bankr. P. 9006(b)(1) (Docket No. 248).

The first issue before the court is whether the SIF received reasonable notice of the *Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Docket No. 12) which discloses to creditors the deadlines to file proofs of claims for all creditors and for those that are governmental units. If reasonable notice was received by the SIF, then the court needs to delve into whether the SIF's untimely filing of its proof of claim falls under the excusable neglect standard pursuant to Fed. R. Bankr. P. 3003(c) and 9006(b)(1).

The parties jointly provided the following uncontested material facts (Docket No. 200):

<u>Material Uncontested Facts</u>

1. The SIF was included as a creditor in the List of Creditors Holding 20 Largest Unsecured Claims filed on August 26, 2013 in the amount of $40,886.79 and with the following mailing address: P.O. Box 42006, San Juan, PR 00940-2006 (Docket No. 9).

2. The SIF was included in Schedule E- (Creditor Holding Unsecured Priority Claims) as having a disputed claim in the amount of $40,887 which is not entitled to priority (Docket No. 18).

3. The mailing address identified as P.O. Box 42006, San Juan, PR 00940-2006 belongs to the SIF's San Juan Regional Office.

4. The *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* was docketed on August 30, 2013 (Docket No. 12). The Notice disclosed that the deadline for a governmental unit to file a proof of claim was February 26, 2014.

5. The Certificate of Notice which was docketed on September 1, 2013, disclosed that the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* was sent to the SIF via electronic transmission by the Bankruptcy Noticing Center to the following e-mail address: Alejandro.Suarez@cfse.gov.pr on August 30, 2013 at 19:54:16.

6. On August 25, 2014, the SIF filed its proof of claim #47-1 for worker's compensation premiums owed for the years 2011 and 2012 in the total amount of $25,772.53 under Temsco's policy number (9417000092).

7. The SIF in its proof of claim #47-1 disclosed that the address where notices should be sent to was the following: P.O. Box 365028, San Juan, Puerto Rico 00936-5028.

8. The SIF's web page at www.cfse.gov.pr, discloses that the SIF has a Central Operations Office with the following postal address: P.O. Box 365028, San Juan, PR 00936.

-14-

Applicable Law and Analysis

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. at 202-203.  Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Celotex Corp. v.

-15-

Catrett, 477 U.S. 317, 322 (1986).  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325.  See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its

opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, this court grants the Debtor's motion for summary judgment and denies the SIF's cross motion for summary judgment.

*Due Process and Notice Requirements*

"Notice is the fulcrum upon which our bankruptcy system balances the interests of creditors and debtors. Getting accurate and detailed notice of anticipated and potential actions to creditors is not only a requirement of the statute and rules, but it is a basic element of due process. Because bankruptcy affects so many entities and so many interests, the notices given and received have greater and broader impact than under most other areas of practice. While due process envisions an independent adjudicator to determine rights, at its heart is the opportunity for all affected parties to be heard on an issue. Constitutional due process encompasses not only the opportunity to be heard but the opportunity to obtain adequate notice of the contemplated action." Henry E. Hildebrand III, *Getting Noticed: The New Notice Requirements of Section 342*, 13 Am. Bankr. Inst. L. Rev. 533 (2005).

Due process generally does not establish a particular form or method of notice. Reasonable notice has been defined as: "notice reasonably calculated, under all circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance…. But if with due regard for the practicalities and peculiarities of the case these conditions are met the constitutional requirements are satisfied." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The purpose of statutorily requiring a debtor to list its creditors with their mailing addresses is to provide them with basic due process notice. In re Glenwood Medical Group, Ltd., 211 B.R. 282, 285 (Bankr. N.D. Ill. 1997). It is the debtor's burden to establish that the creditor received adequate notice. See In re O'Sullivan, 488 B.R. 510, 513 citing In re Massa, 187 F. 2d 292, 296 (2d. Cir. 1999).  However, if "… a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided was so incorrect as to fall short of this threshold." WebMD Practice Servs. v. Sedlacek (In re Sedlacek), 325 B.R. 202, 217 (Bankr. E.D. Tenn. 2005) citing In re Kleather, 208 B.R. 406, 410 (Bankr. S.D. Ohio 1997).

The Bankruptcy Code provides "no guidance as to what is the proper address of a creditor, it is clear that such an address must provide the creditor reasonable notice of the bankruptcy proceeding." Id. "Courts generally consider the totality of the circumstances in determining whether notice was reasonable." In re O'Sullivan, 488 B.R. 510,  513 (Bankr. D. Mass. 2013) citing People ex rel. Hartigan v. Peters, 871 F. 2d. 1336, 1340 (7th Cir. 1989). "What constitutes 'reasonable notice,' however, varies according to the knowledge of the parties." In re S.N.A. Nut Co., 198 B.R. 541, 543 (Bankr. N.D. Ill. 1996). "One circumstance to consider in evaluating the sufficiency of the notice is whether alleged inadequacies in the notice prejudiced the creditor." In re Walker, 149 B.R. 511, 514 (Bankr. N.D. Ill. 1992) citing People

ex rel. Hartigan v. Peters, 871 F. 2d. at 1340. Another factor to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of rights. Id. at 514 citing Memphis Light, Gas, and Water Div. v. Craft, 436 U.S. 1, 13, 56 L. Ed. 2d 30, 98 S. Ct. 1554 (1978); Armstrong v. Manzo, 380 U.S. 545 at 551-552; Aacen v. San Juan County Sheriff's Dept., 944 F. 2d 691, 696-97 (10th Cir. 1991); Chicago Cable Communications, 879 F. 2d at 1545.

If a creditor does not receive reasonable notice of a bankruptcy case and the particular bar dates, then its claim cannot be constitutionally discharged. See In re O'Shaughnessy, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) citing In re Longardner & Associates, Inc., 855 F. 2d 455, 465 (7th Cir. 1988), cert. denied, 489 U.S. 1015 (1989).

The Bankruptcy Code and Rules require a debtor to list all of its creditors so that these creditors are notified of key events in the bankruptcy proceeding that may affect their rights. "The Bankruptcy Rules specify that known creditors must receive: (1) notice of deadlines for filing proofs of claims (bar date), Fed. R. Bankr. P. 2002(a)(7); (2) a copy of the reorganization plan, Fed. R. Bankr. P. 3017(d); (3) notice of the confirmation hearing, Fed. R. Bankr. P. 3017(d); and (4) the confirmation order, Fed. R. Bankr. P. 2002(f)." Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F. 3d 76, 82 (1st Cir. 2008).

In the instant case, the first issue is whether the SIF received adequate (reasonable) notice of the *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Docket No. 12) or any other required notice to satisfy the due process requirements and place the SIF on inquiry notice of the bar date for filing its proof of claim, particularly when Temsco had listed its claim as disputed. There are several interrelated sections of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure that must be analyzed in order to properly adjudicate this issue.

*Pertinent Bankruptcy Code Sections and Fed. R. Bankruptcy Procedure Regarding Noticing*

Section 342 of the Bankruptcy Code establishes the requisite notice for parties affected by a debtor's bankruptcy. Section 342(a) provides: "[t]here shall be given such notice as is appropriate, including notice to any holder of any community claim, of an order for relief in a case in a case under this title." 11 U.S.C. §342(a). Section 342(c)(1) applies only to notices given by debtors, meaning that it has no applicability to notices given by the court or other parties. The same provides:

> "If notice is required to be given by the debtor to a creditor under this title, any rule, any applicable law, or any order of the court, such notice shall contain the name, address, and last four digits of the taxpayer identification number of the debtor. If the notice concerns an amendment that adds a creditor to the schedules of assets and liabilities, the debtor shall include the full taxpayer identification number in the notice sent to that creditor, but the debtor shall include only the last 4 digits of the taxpayer identification number in the copy of the notice filed with the court." 11 U.S.C. §342(c).

To ensure that adequate notice is provided to creditors pursuant to section 342(a), section 521(a)(1) and Fed. R. Bankr. P. 1007(a)(1) require the debtor to file a list of creditors with their names and addresses.

Section 521(a)(1) provides that one of the debtor's duties, is to "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and statement of the debtor's financial affairs." 11 U.S.C. §521(a)(1)(A), (B)(i-iii). Fed. R. Bankr. P. 1007(a)(1) requires that for voluntary cases, "the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E, F, G, and H as prescribed by the Official Forms." Moreover, Fed. R. Bankr. P. 1007(d)[1] also requires that for chapter 9 and 11 cases, the

---

[1] Fed. R. Bankr. P. 1007(d) provides in pertinent part: "In addition, to the list required by subdivision (a) of this rule, a debtor in a chapter 9 municipality case or a debtor in a voluntary chapter 11 reorganization case shall file with the

bankruptcy petition should also include the list of the holders of the 20 largest unsecured claims which lists the names, address, and claim of these creditors that hold the 20 largest unsecured claims. P.R. LBR 1007-1(a) provides that:

> "[a]ll cases filed through the electronic system should have the creditor's mailing matrix uploaded immediately upon filing. In voluntary cases filed by conventional means, a mailing matrix must be filed with the petition. The matrix must contain the names and addresses, including zip codes, of all known creditors and holders of executory contracts." P.R. LBR 1007-1(a).

In addition, P.R LBR 1007-1(f) provides the following for Chapter 11 cases:

> "[t]he debtor in each chapter 11 case must serve LBF A on each creditor whose claim is listed on the schedules as disputed, contingent, or unliquidated, within fourteen (14) days after filing the schedules of liabilities, or within fourteen (14) days of adding those creditors to previously filed schedules. The notification must advise those creditors of their right to file proofs of claim and indicate that failure to do so shall prevent them from voting upon the plan or participating in any distribution thereunder. Debtor must file with the clerk a certificate of service evidencing compliance with this LBR within fourteen (14) days of service." P.R. LBR 1007-1(f).

Fed. R. Bankr. P. 2002(a) provides in pertinent part:

> "Except as provided in subdivisions (h), (i), (l), (p) and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:

> > (1) the meeting of creditors under §341 or §1104(b) of the Code, which notice, unless the court orders otherwise, shall include the debtor's employer identification number, Social Security number, and any other federal taxpayer identification number;---

> > (7) the time fixed for filing proofs of claims pursuant to Rule 3003(c)" Fed. R. Bankr. P. 2002(a)(1), (7).

Thus, pursuant to Fed. R. Bankr. P. 2002(a), the responsibility for sending notice of the meeting of creditors under 11 U.S.C. §341 and the bar dates for filing proofs of claims pursuant

---

petition a list containing the name, address and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders, as prescribed by the appropriate Official Form."

to Fed. R. Bankr. P. 3003(c) is bestowed upon "the clerk, or some other person as the court may direct." P.R. LBR 3003-1[2] provides that creditors whose claims have been scheduled as disputed, contingent, or unliquidated in a chapter 11 case may file their claims within 90 days after the date first set for the §341 meeting of creditors and for governmental units 180 days after the date of the order for relief.

Fed. R. Bankr. P. 9036 provides:

"Whenever the clerk or some other person as directed by the court is required to send notice by mail and the entity entitled to receive the notice requests in writing that, instead of notice by mail, all or part of the information required to be contained in the notice be sent by a specified type of electronic transmission, the court may direct the clerk or other person to send the information by such electronic transmission. Notice by electronic means is complete on transmission." Fed. R. Bankr. P. 9036

P.R. LBR 9036-1(a)(1), (2) provides:

"(1) Notice shall be given by electronic transmission to any entity entitled to receive the bankruptcy notice if: (A) a written request is made by the entity for electronic notice; (B) the entity executes an electronic notice agreement with the Bankruptcy Noticing Center (www.ebnuscourts.com) and otherwise meets the system requirements for electronic noticing; and (C) the clerk's office is capable of transmitting the notices electronically.

(2) Filing users of CM/ECF consent to notice and service by electronic transmission upon registration as filing users. A Notice of Electronic Filing ("NEF") is automatically generated by CM/ECF and sent electronically to filing users. Service of the NEF constitutes notice and service pursuant to the Fed. R. Civ. P., Fed. R. Bankr. P., and these rules for all persons and entities that have consented to electronic service." P.R. LBR 9036-1(a)(1), (2).

In order for an entity to receive bankruptcy notices by electronic transmission, the entity must complete an *"Electronic Bankruptcy Noticing Agreement to Initiate Electronic Bankruptcy Noticing via E-mail"* by which an authorized representative of the entity enters into this agreement to receive its bankruptcy notices via e-mail instead of through regular U.S. mail from

---

[2] P.R. LBR 3003-1 provides: "Any creditor or equity security holder whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated in a chapter 11 case may file a claim not later than ninety (90) days after the date first sent for the §341 meeting of creditors, or for governmental units, within one hundred and eighty (180) days after the date of the order for relief, unless otherwise ordered by the court."

the Bankruptcy Noticing Center ("BNC"). Amongst the advantages of notification through the e-mail, is that, "[n]otices normally sent to all your branch locations can be sent to one e-mail address. E-mailed notices are easy to forward to people. Additionally, e-mailed notices stored on your computer are easier to find when you need them." See ebn.uscourts.gov/register/EBN/_mail_link.pdf. This agreement also discloses in bold letters the following: "[y]ou must notify the BNC if your e-mail address, names, and mailing addresses used for electronic noticing change." In addition the agreement also states that, "[e]ither party may terminate this Agreement without cause by giving the other party written notice." Lastly, there is a Note in bold letters that states as follows: "[t]he BNC does not process all the notices you may receive in a case. Notices generated by trustees, attorneys, debtors, and some court-generated notices or orders will continue to be mailed to your address specified in the court record."

In the instant case, the Clerk of the Court, pursuant to Fed. R. Bankr. P. 2002(a)(1) and (7), has the responsibility for sending notice of the meeting of creditors under 11 U.S.C. §341 and the bar dates for filing proofs of claims set forth in Fed. R. Bankr. P. 3003(c). The *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Docket No. 12) informs all listed creditors pursuant to the mailing matrix (which is submitted by the debtor) that a particular debtor has filed for bankruptcy, the date of the meeting of creditors and the deadline to file a proof of claim for all creditors and for a governmental unit. The certificate of notice (Docket No. 14) discloses that on August 30, 2013 at 19:54:16 this particular Notice was sent by electronic transmission by the Bankruptcy Noticing Center to the CFSE (the acronym for the SIF in the Spanish language) to the following e-mail: Alejandro.Suarez@cfse.gov.pr. The Debtor in its mailing matrix (Docket No. 10, pg. 8) listed the SIF ("CFSE") with the following mailing

address: P.O. Box 42006, San Juan, PR 00940-2006. The SIF was noticed by the court to the previously referenced e-mail because Alejandro Suarez, as representative of the SIF, executed an *Electronic Bankruptcy Noticing Agreement to Initiate Electronic Bankruptcy Noticing via E-mail* with the BNC.[3] Consequently, the court finds that the SIF received reasonable notice of Temsco's bankruptcy filing, the date of the 341 meeting of creditors and the deadline to file a proof of claim for a governmental unit. The court further finds that pursuant to the Agreement, it was the responsibility of the SIF's representative to notify the BNC if there was a change in its e-mail address, names, and mailing address. The court notes that the certificate of service of the *Order conditionally approving the Disclosure Statement, Fixing the Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Thereof and of the Hearing on Confirmation of the Plan* (Docket No. 106) docketed on July 18, 2014 discloses that the SIF ("CFSE") was noticed by electronic transmission by the Bankruptcy Noticing Center to the following new e-mail address: lramos5@fondopr.com on July 16, 2014 at 19:17:58. The court notes that the SIF's first appearance in this case was on August 25, 2014 via a *Motion Requesting Permission to File Late Proof of Claim by the State Insurance Fund Corporation* (Docket No. 123).

However, the analysis does not conclude at this juncture. Temsco listed the SIF's claim as disputed in Schedule E (Creditors Holding Unsecured Priority Claims) (Docket No. 18).

---

[3] Temsco's attorney alleges that she contacted the BNC on January 23, 2015 and a representative from the BNC informed her that the SIF had executed and filed an Electronic Bankruptcy Noticing Agreement on July 12, 2010. In such agreement, the SIF agreed to receive bankruptcy notices via e-mail to Alejandro.Suarez@cfse.gov.pr and thus, the notice of the Chapter 11 case was sent to said e-mail address. The BNC has no authorization to provide a copy of said agreement. The court pursuant to Fed. R. Evid. 201(a), (b), and (c), takes judicial notice that Alejandro Suarez Cabrera signed an EBN Noticing Agreement and the same was activated on July 14, 2010. On June 2, 2014, Luis R. Ramos Cartagena signed an agreement and notices are now going to Mr. Ramos.

Section 1111(a)[4] provides that a claim listed in the Debtor's schedules is deemed filed, unless it is scheduled as disputed, contingent or unliquidated. Thus, if a debtor does not schedule a creditor's claim as disputed, contingent or unliquidated, the creditor does not need to file a proof of claim (unless it is in disagreement as to the amount of the claim) P.R. LBR 1007-1(f) requires that the debtor in chapter 11 cases serve LBF A on each creditor whose claim is listed as disputed, contingent, or unliquidated within 14 days after the filing the schedules of liabilities. The rule also requires that the notification advise those creditors of their right to file proofs of claim and indicate that failure to do so shall prevent them from voting upon the plan or participating in any distribution thereunder. The debtor must file with the clerk a certificate of service evidencing compliance with this LBR within fourteen (14) days of service. See P.R. LBR 1007-1(f). The court finds that the Debtor failed to comply with P.R. LBR 1007-1(f) to notice not only the SIF to its mailing address but to all the other creditors whose claims were listed by the debtor as disputed, contingent and/or unliquidated.

The SIF received notice regarding the Debtor's bankruptcy filing, the date of the 341 meeting of creditors and the deadline to file a proof of claim for a governmental unit. However, the SIF (or any creditor whose claim was listed as disputed, contingent, or unliquidated) did not receive notification pursuant to P.R. LBR 1007-1(f) which advises creditors of their right to file proofs of claim and also indicates that failure to do so shall prevent them from voting upon the plan or participating in any distribution.

The court will address the second issue, namely, whether the SIF's failure to file its proof of claim on a timely manner was due to excusable neglect.

---

[4] 11 U.S.C. 1111(a) provides: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)91) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. §1111(a).

-25-

*Filing Late Proofs of Claim pursuant to Fed. R. Bankr. P. 3003(c) and 9006(b)(1)*

Fed. R. Bankr. P. 3003(c) establishes the time for filing a proof of claim in a chapter 11 case. Generally, in chapter 11 cases, the bankruptcy courts must set a bar date for all creditors to file their proofs of claims pursuant to Fed. R. Bankr. P. 3003(c)(2) and (3) provide:

> "(c)(2)[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor who fails with respect to such claim for the purposes of voting and distribution.
>
> (c)(3) [t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6)." Fed. R. Bankr. P. 3003(c)(2)-(3).

Fed. R. Bankr. P. 3003(c)(3) mandates the court to establish the bar dates for filing proofs of claim and permits extensions of time to file the same for "cause shown." P.R. LBR 3003-1 provides the bar dates in chapter 11 cases by providing as follows:

> "[a]ny creditor or equity security holder whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated in a chapter 11 case may file a claim not later than ninety (90) days after the date first set for the §341 meeting of creditors, or for governmental units, within one hundred and eighty (180) days after the date of the order for relief, unless otherwise ordered by the court." P.R. LBR 3003-1.

The Notice sent by the Clerk of the court disclosed the deadlines to file a proof of claim for all creditors was 12/26/13 and for a governmental unit the deadline was 02/26/14. Once the bar date to file a proof of claim has lapsed, a creditor in a chapter 11 case may request the court an extension of time to file its claim pursuant to Fed. R. Bankr. P. 3003(c)(3) and Fed. R. Bankr. P. 9006(b)(1) which provides:

> "[e]xcept as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by

a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

Thus, once the deadline to file a claim has lapsed, a creditor may request to file a proof of claim if its failure to file on a timely manner was due to "excusable neglect." The creditor seeking to have its proof of claim deemed timely filed has the burden of proving "excusable neglect" by a preponderance of the evidence. See In re O'Shaughnessy, 252 B.R. 722, 730-731 (Bankr. N.D. Ill. 2000). The Bankruptcy Court in In re O'Shaugnessy summarizes the Supreme Court's analysis in Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 74 (1993), for determining "excusable neglect" pursuant to Fed. R. Bankr. P. 9006(b)(1). The analysis is as follows:

"First, the movant must show that its actions constituted 'neglect.' Neglect can be established either by (1) circumstances beyond the movant's control, or (2) the movant's inadvertence, mistake or carelessness. Id. at 387-388. If neglect is shown, then the movant must prove that the neglect was 'excusable.' This entails a balancing test which includes review of the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith. Id. at 395. These factors are nonexclusive; the test requires an equitable determination 'taking account of all relevant circumstances surrounding the parties omission.' Id. (footnote omitted)." In re O'Shaughnessy, 252 B.R. at 731.

At this juncture, the court finds that it does not need to delve into the second issue of determining whether the SIF's failure to file a timely proof of claim (the SIF received reasonable notice) was due to excusable neglect. The court already held that the SIF received reasonable (adequate) notice of the Debtor's bankruptcy case and the particular bar dates, thus the SIF is bound by the confirmation order. The court is in agreement with the analysis in In re St. James

Mechanical Inc., 434 B.R. 54, 61-62[5] (E.D.N.Y. 2010) to the extent that a creditor that has received adequate notice of the bankruptcy filing and bar dates to file proof of claims and the plan of reorganization has already been confirmed does not have an enforceable claim. Adjudicating the contrary would place Section 1141(a) and Fed. R. Bankr. P. 9006(b)(1) in conflict.

The confirmation of a plan of reorganization has a binding effect (res judicata) and thus, bars the allowance of untimely proof of claims. "If creditors have 'been given notice [of a bar date] sufficient to satisfy due process,' their obligations are binding on the debtor and all creditors." In re St. James Mech., Inc., 434 B.R. 54, 61 (Bankr. E.D.N.Y. 2010) citing DePippo v. Kmart Corp., 335 B.R. 290, 295 (S.D.N.Y) (quoting Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp., No. 02Civ.9629, 2003 U.S. Dist. Lexis 902, 2003 WL 21355214 at *3 (S.D.N.Y. June 11, 2003)).

The Debtor's plan of reorganization was confirmed on August 29, 2014, thus the key issue is the effect of a confirmed plan of reorganization on a pre-petition claim. Section 1141(a) provides:

> "Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. §1141(a).

---

[5] "Because of the post-confirmation discharge granted by section 1141, a creditor, who has received notice which satisfies the due-process requirements imposed by the Constitution, can no longer be viewed as having a claim. It is axiomatic that a creditor cannot rely upon Rule 9006(b)(1) to extend the time period within which to file a proof of claim if that creditor no longer has an enforceable claim to assert against the debtor. The language 'at any time' in Rule 9006(b)(1) denotes any time during which a creditor holds an enforceable claim against the debtor. Post-confirmation, a creditor has no claim against the debtor. A court may not resurrect through the use of Rule 9006 that which no longer exists by operation of Bankruptcy Code §1141." In re St. James Mechanical Inc., 434 B.R. 54, 61-62 (2010).

Section 1141(d)(1)(A) of the Code provides:

"Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
(ii) such claim is allowed under section 502 of this title; or
(iii) the holder of such claim has accepted the plan." 11 U.S.C. §1141(d)(1)(A)(i-iii).

Collier explains the extent of the binding effect of a plan pursuant to 11 U.S.C. §1141(a) by stating that the same, "is binding upon a broad list of entities once it is confirmed. Under this provision, subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim against or interest in the debtor even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan or is not entitled to retain an interest under such plan. In other words, a confirmed plan precludes parties from raising claims or issues that could have or should have been raised before confirmation but were not." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1141.02 (16th ed. 2015). Even if the plan contains legal errors and confirmation was improper, the plan is binding if the parties failed to object or timely appeal. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 273 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010). In United Student Aid Funds, Inc. v. Espinosa, the Supreme Court explained that if parties were provided with adequate notice in conformity with

the Due Process clause of the Constitution, the plan was binding on all creditors. Id. at 273; See also; In re St. James Mech., Inc., 434 B.R. 54, 64 (Bankr. E.D.N.Y. 2010).

Therefore, the court finds that the terms of the confirmed plan of reorganization are binding and enforceable, meaning that the SIF is not entitled to receive any distribution pursuant to the plan.

Conclusion

In view of the foregoing, the court finds that the SIF received reasonable notice regarding the Debtor's bankruptcy filing, the date of the 341 meeting of creditors and the deadline to file a proof of claim for a governmental unit.  The court further finds that a creditor that receives adequate notice may not employ Fed.R. Bankr. P. 9006(b)(1) to file an untimely claim after a plan has been confirmed. This would contravene the binding effect of Section 1141(a). Therefore, the Debtor's motion for summary judgment is granted and the SIF's cross motion for summary judgment is denied.

SO ORDERED.

In San Juan, Puerto Rico, this 27th day of August, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge